# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLETTE SNEED,<br><br>                   Plaintiff,<br>vs.<br><br>CHASE HOME FINANCE LLC, FIRST FEDERAL BANK OF CALIFORNIA, HOMEQ SERVICING, COUNTRYWIDE, GMAC/SILVERSTATE,<br><br>                   Defendants. | CASE NO. 07CV0729-LAB (AJB)<br><br>**ORDER GRANTING DEFENDANT FIRST FEDERAL BANK OF CALIFORNIA'S MOTION TO DISMISS; and ORDER PURSUANT TO FED. R. CIV. P. 11** |

On April 20, 2007, Plaintiff filed her complaint, styled "Complaint to Action of Quiet Title/Lis Penden." [sic]. The caption identifies three broad theories of recovery. The first is violation of the Truth in Lending Act's Regulation Z and related statutes; the second is invasion of Title pursuant to various cited authorities, including Regulation Z. The third specifies no basis for recovery but merely mentions the International Protocol of the United Nations Convention on International Bills of Exchange and International Promissory Notes (the "U.N. Convention"), House Joint Resolution 192[1] (identified as "the United States

---

[1] Plaintiff identifies this as "the United States insurance policy." It appears to refer to H.R. J. Res. 192, 73rd Cong. (1933), which deals with the standards for currency. *See United States v. Lee*, 427 F.3d 881, 888 (11th Cir. 2005) (describing a letter sent to a bank, referencing House Joint Resolution 192).

insurance policy") and the "Emergency Bankruptcy of 1933" [sic], and Am.Jur.2d 81. Plaintiff also references RICO and mentions constructive fraud, and counterfeiting of securities. In fact, the dispute apparently concerns loans secured by six parcels of real property in California and Arizona.

On May 16, 2007, Defendant First Federal Bank of California ("First Federal") filed a motion to dismiss. On June 7, 2007, Defendant Countrywide Home Loans, Inc. ("Countrywide") filed its own motion to dismiss. No other Defendants have yet appeared in this action, nor have any other Defendants joined in First Federal's motion, which addresses Plaintiff's standing in connection with one of the properties. The Court therefore construes First Federal's motion as applying only to claims against it. Plaintiff attempted to file an opposition ten days late, just two court days before the scheduled hearing, which was rejected by discrepancy order.

I.   **Legal Standards**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party, drawing all reasonable inferences from the allegations in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

However, the Court does not accept unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964–65 (2007) (citations, alterations, and internal quotation marks omitted).

/ / /

Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.")

If a motion to dismiss is granted, the court may grant leave to amend. Leave should be granted unless "the pleading could not possibly be cured by the allegation of other facts" and if it appears "at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

Allegations asserted by parties proceeding *pro se*, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 519–20 (1972). Thus, the Court liberally construes the pleadings of *pro se* litigants. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). Although the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). The Court will not supply facts Plaintiff has not pled. *See Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**II. Discussion**

Defendant First Federal argues the complaint should be dismissed because Plaintiff has not pled facts showing either that she has standing to sue or why relief can be granted. First Federal contends Plaintiff does not own or reside in the real property located at 2402 Cullivan Street, in Inglewood, California.

First Federal offers a number of factual contentions it believes shows Plaintiff's Regulation Z theory must fail. It states: 1) its disclosure to Plaintiff was proper on its face; 2) Plaintiff has not alleged she provided written communication of her intent to rescind; 3) Plaintiff failed to offer restitution; and 4) the statute of limitations on rescission has expired. While the Court does not weigh evidence at this stage, *Cahill*, 80 F.3d at 337–38 (setting forth standard for Rule 12(b)(6) motion), the Court construes these contentions as pointing out the incompleteness of Plaintiff's factual allegations. First Federal's essential argument

is that Plaintiff is committing fraud by obtaining loans secured by property then, after the property has been sold, attempting to rescind the loans and keep the money.

### A.     The Complaint

The complaint is largely unintelligible, consisting of unrecognizable citations and legal terminology. The citations and argument appear to duplicate the body of at least one other complaint recently filed in this district. *See, e.g., Belle v. Chase Home Finance LLC*, No. 06cv2454, 2007 WL 1518341, *1 (S.D.Cal., May 22, 2007) (describing in detail a substantially identical complaint). However, the core of the complaint in this case appears to be that Plaintiff is dissatisfied in various ways with the way the loans on the subject properties were handled, and seeks damages, rescission of the loan agreements, and return of the properties.

As Defendant First Federal correctly points out, Plaintiff has failed to plead facts showing she would be entitled under any theory to recover damages or obtain possession of the property. Plaintiff has not alleged what her relationship to the properties in question was. On the face of the complaint it is obvious none of the properties is her residence,[2] as would be required to invoke a consumer's right to rescind. *See* 12 C.F.R. § 226.23(a) (pertaining to right of rescission, and referencing "a consumer's principal dwelling").[3] Furthermore, although Plaintiff alleges she rescinded the loans, she does not allege facts telling how she did so, but rather seems to assert that her rescission, however accomplished, was valid. This is too conclusory to withstand the Fed. R. Civ. P. 12(b)(6) standard.

Plaintiff references several international agreements or declarations, including the U.N. Convention, the International Protocol and Domicile Rule, and the Universal Declaration on Human Rights which she also refers to as the International Bill of Rights. The U.N.

---

[2] The title page of the complaint gives Plaintiff's address in San Diego, California. None of the properties at issue in this case are located at that address, nor are any of them even in San Diego.

[3] First Federal cites no authority for the proposition that ownership of the residence affects jurisdictional standing. Therefore, the Court will not weigh evidence at this stage, as it would in the case of a Rule 12(b)(1) motion. Autery v. U.S. 424 F.3d 944, 956 (9th Cir. 2005) (holding that a district court may weigh evidence on a Rule 12(b)(1) challenge to jurisdiction).

1  Convention has not been ratified by the U.S. Senate and therefore does not give rise to a
2  cause of action.  After extensive research, no International Protocol and Domicile Rule was
3  located.  Finally, the Universal Declaration of Human Rights is a declaration by the United
4  Nations, not a treaty.  *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 818,(D.C.Cir. 1984)
5  (citing authority for the principle that the Universal Declaration on Human Rights "is not a
6  treaty; it is not an international agreement. It is not and does not purport to be a statement
7  of law or of legal obligation.")  Although the United States voted for it, the Universal
8  Declaration on Human Rights does not support Plaintiff's cause of action.

9  In short, the complaint does not state a claim against Defendant First Federal.

10  **B.    Fed. R. Civ. P. 11 Notice**

11  Plaintiff's allegations concerning the loans appear to be contradictory.  She alleges
12  both that Defendants never loaned anything of value (Complaint at 7:21–8:3 ("[T]here is
13  evidence that [Defendants] never loaned anything to Charlette Sneed . . . ."); *id.* at 10:15–16
14  ("[N]o lawful money was lent to the Plaintiff."); *id.* at 11:13–14 (suggesting Defendants lent
15  counterfeit securities)) and also that payment of the loan in full was attempted (*id.* at 7:17–20
16  ("[A] payment in full was dishonored by [Defendants] . . . .")  The nature of the alleged
17  business relationship, where nothing of value was lent but where Plaintiff attempted to repay
18  the loan anyway, is never explained.

19  The resolution of this paradox appears to be that Plaintiff does not recognize U.S.
20  Federal Reserve notes as legal tender (or "lawful money," as she terms it).  Plaintiff
21  repeatedly either implies or asserts that Defendants did not lend lawful currency. (Complaint
22  at 5:1–6:2 (giving H.R. J. Res. 192, 73rd Cong. (1933) as the basis for identifying the loans
23  as faulty); *id.* at 11:13–14 (accusing Defendants of depositing counterfeit securities into her
24  account); *id.* at 13:2–15 (alleging Defendants should have disclosed the fact that they were
25  not lending "lawful money," and asserting that pursuant to U.S. Const. Art I, § 10, cl. 1, "the
26  only lawful tender is gold and silver coin"); *id.* at 14:21–22 (arguing the U.S. Constitution
27  prohibits dealing in "Bills of credit")).  In particular, Plaintiff reveals her thinking in a boldface
28  / / /

paragraph citing what purport to be cases of Minnesota state courts[4] for the proposition that "Federal Reserve Notes [are] fiat money and not legal tender . . . ." (*Id.* at 14:4–11.)

Pursuant to Fed. R. Civ. P. 11, the Court hereby admonishes Plaintiff that these arguments are legally frivolous. It has long been established that Federal Reserve Notes are legal tender and that legal tender need not consist of silver or gold coin. *See generally Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 303, 55 S.Ct. 407, 414 (1935) (explaining the validity and effect of federal acts providing for the issuance of currency, and affirming the status of Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations as legal tender); *Foret v. Wilson*, 725 F.2d 254, 254–55 (5th Cir. 1984) ("[The] argument, that only gold and silver coin may be constituted legal tender by the United States, is hopeless and frivolous, having been rejected finally by the United States Supreme Court one hundred years ago. ") (citing *Juilliard v. Greenman*, 110 U.S. 421 (1884)). Furthermore, it is equally well-established that checks or other instruments redeemable for Federal Reserve notes have value. *United States v. Wangrud*, 533 F.2d 495, 495 (9th Cir. 1976) (affirming conviction of defendant who refused to pay taxes on the grounds that he received checks, not money, and noting that defendant's arguments had "absolutely no merit.") Finally, U.S. Const., § 10, cl. 1 merely restricts the powers of states, not the federal government, to issue money. Although Plaintiff is proceeding *pro se*, Rule 11 applies to her. Should she continue to offer frivolous arguments, she will be subject to sanctions.

Furthermore, the Minnesota cases cited by Plaintiff are not only unreported, but they have been vacated by the Minnesota Supreme Court in reported decisions. *See In re Daly*, 171 N.W.2d 818; *Zurn v. Northwestern Nat. Bank of Minneapolis*, 170 N.W.2d 600, 284 Minn. 573 (Minn. 1969); *Daly v. Savage State Bank*, 171 N.W.2d 218, 218, 285 Minn. 503, 503 (Minn. 1969). Plaintiff is hereby admonished she must not cite any decision under which

---

[4] Plaintiff identifies these cases as *Jerome Daly v. First National Bank of Montgomery, Minn.*, and *Justice Martin v. Mahoney Credit River Township*, December 7–9, 1968. In fact, these appear to be unreported decisions with garbled captions. Martin V. Mahoney was a justice of the peace of Scott County, Minnesota who, together with attorney Jerome Daly, was the subject of prohibition and contempt proceedings in the Minnesota Supreme Court in 1969. *See In re Daly*, 171 N.W.2d 818, 820, 284 Minn. 567, 567 (Minn. 1969).

Justice Martin Mahoney purported to question the validity of federal currency or the Constitutionality of the Federal Reserve Act, nor may she cite any opinion or decision as authoritative which no longer has authoritative status.

Plaintiff's rejected late opposition to First Federal's motion to dismiss consists almost entirely of similar arguments and references to similar purported authorities; thus, even if it had been timely and accepted for filing, the opposition would not have been pertinent.

### III.   Conclusion and Order

For the preceding reasons, all claims against Defendant First Federal are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff is directed to review Fed. R. Civ. P. 11. In view of the lateness of Plaintiff's attempted filing of her opposition, and the condition of the document, Plaintiff is directed to review Civil Local Rules 5.1(a) and 7.1(e).

**IT IS SO ORDERED**.

DATED: June 26, 2007

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge